WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Holly M. Beck,<br><br>        Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of the Social Security Administration,<br><br>        Defendant, | CV 13-1098 TUC DCB<br><br>**O R D E R** |

On August 18, 2014, Magistrate Judge Markovich issued a Report and Recommendation (R&R), pursuant to the Rules of Practice for the United States District Court, District of Arizona (LRCiv), Rule 72.1(a). (Doc. 19: R&R.) He recommends affirming the denial of disability benefits by an administrative law judge (ALJ). The Court does not adopt the R&R. The Court remands the case to the Social Security Commissioner for further hearing and development of the record.

## STANDARD OF REVIEW

The duties of the district court, when reviewing a R&R by a Magistrate Judge, are set forth in Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b), 28 U.S.C. § 636(b)(1).

Pursuant to 28 U.S.C. § 636(b), this Court makes a *de novo* determination as to those portions of the R&R to which there are objections. 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made.") To the extent that no objection has been made, arguments to the contrary have been waived. *McCall v. Andrus*, 628 F.2d 1185,

1187 (9th Cir. 1980) (failure to object to Magistrate's report waives right to do so on appeal); *see also*, Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974) (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation). But even where there are no objections, the Court nevertheless reviews at a minimum, *de novo*, the Magistrate Judge's conclusions of law. *Robbins v. Carey*, 481 F.3d 1143, 1147 (9th Cir. 2007) (citing *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998) (conclusions of law by a magistrate judge reviewed *de novo*); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991) (failure to object standing alone will not ordinarily waive question of law, but is a factor in considering the propriety of finding waiver)).

## REPORT AND RECOMMENDATION

The Magistrate Judge recommends the Court affirm the ALJ's determination that the Plaintiff was not credible, and she had the residual functional capacity (RFC) to perform sedentary work as she had performed it in her past work as a dispatcher and as performed, generally, in the national economy. Because the ALJ found she could perform her past work which was sedentary, the ALJ found she was not disabled. The Magistrate Judge found no legal error in the ALJ's credibility determination and that substantial evidence exists in the record to support the ALJ's disability decision.

By objection, the Plaintiff challenges the R&R because: 1) the Magistrate Judge recommendation affirms the ALJ's RFC that omitted Plaintiff's need for a cane; 2) the Magistrate Judge presupposed the ALJ adequately developed the record; 3) the Magistrate Judge made an error of law in assessing the duration requirement for determining disability, especially in respect to Plaintiff's assertions of disability related to severe osteoarthritis in her hips.

This Court reviews an ALJ's disability determination based only on the reasons provided by the ALJ and may not affirm the ALJ on a ground upon which he did not rely. *Garrison v. Colvin*, ___ F.3d ___, 2014 WL 3397218 *11 (9th Cir. July 14, 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th cir. 2003). Accordingly, this Court turns directly to the ALJ's

decision issued June 21, 2012. The Court recaps the record in summary fashion to reflect an overview of Plaintiff's medical conditions spanning what is approximately 5 years: 2008 through 2012.

## THE ALJ'S DECISION

Plaintiff's date of last employment was December 4, 2008, the alleged onset date of disability due to breast cancer, kidney problems and a total hysterectomy. Plaintiff filed her claim of disability for both Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on October 15, 2010. She had collected unemployment benefits from her termination, December 4, 2008, to approximately October 2010. On March 23, 2011, she was initially denied disability due to breast cancer, kidney and total hysterotomy because she was found to not have a severe disability precluding her from working. She filed for reconsideration on June 30, 2011, and on September 15, 2011, she was denied disability due to these same impairments, plus bilateral hip arthritis, because she could perform sedentary work. The hearing before the ALJ was held on May 31, 2012, with the decision issued June 21, 2012.[1] For purposes of DIB, she met the insured status requirements for receiving benefits through June 30, 2013.

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

---

[1] The ALJ's decision became the Commissioner's final decision on August 6, 2013, when the Appeals Council denied Beck's request for review.

- 3 -

The Court has the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). However, an ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir.2006); 42 U.S.C. §§ 405(g), 1383(c)(3). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir.2007). The Court must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by cherry picking a quantum of supporting evidence. *Id.*

Of importance, here, is the ALJ's responsibility to determine credibility, resolve conflicts in medical testimony, and resolve ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9thCir.1995). Where the evidence can reasonably support either affirming or reversing a decision, the Court may not substitute its judgment for that of the ALJ. *Id.* However, adjudicating social security claims diverges from the adversary model by making the ALJ responsible for developing sufficient medical evidence about an impairment to make a determination of disability. 20 C.F.R. § 416.917(a). "'It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (9th Cir. 1988) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (further citations omitted). With these standards in mind the Court turns to the reasons provided by the ALJ in the disability determination.

At step one of the five-step disability determination, the ALJ concluded the Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability in 2008. At step two, the ALJ concluded that Plaintiff established that her obesity, diabetes; hypertension; Meniere's disease; osteoarthritis, and asthma were all severe impairments because these impairments result in more than a minimal impact on her ability to perform basic work

- 4 -

activities. The ALJ recognized that because Plaintiff had a severe medically determinable impairment, "all medically determinable impairments must be considered in the remaining steps of the sequential analysis." See 42 U.S.C. § 423(d)(2)(B).  These included: history of breast cancer, left-sided sensorineural hearing loss, post-hernia surgery and chronic Stage III kidney disease.  (P's Opening Brief (Doc. 13) at 6.)  At step three, the ALJ concluded that none of Plaintiff's impairments met or equaled a listed impairment which would require an automatic finding of disability. At step four, the ALJ concluded that given all Plaintiff's impairments, her RFC did not prevent her from performing sedentary work, that her past work as a dispatcher was sedentary work and, therefore, Plaintiff was not disabled.

Plaintiff's burden of proof to establish a prima facia case of disability, means that at step four in the disability determination process she must show impairments which prevent her from doing former work. *Gamer v. Secretary of Health & Human Services*, 815 F.2d 1275, 1278 (9th Cir. 1987) (citing *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1987).  Because the ALJ found Plaintiff could perform her past work, Plaintiff was found not disabled at step four.   It is at step five, that the burden shifts to the Commissioner to establish that the Plaintiff is not disabled, *Fife v. Heckler*, 767 F.2d 1427 (9th Cir. 1985), by showing, based on the claimant's residual functional capacity, age, education, and past work experience, that Plaintiff can do other work. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f)).  Here, the burden never shifted to the Commissioner and remains on the Plaintiff to establish her disability at step four.

The ALJ concluded that the Plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms, but not to the extent of intensity, persistence and limiting effects claimed by the Plaintiff.  She testified at her hearing on May 31, 2012, that she is able to handle her personal care; she does some household chores; she does not cook or go shopping; she does not exercise; she can ride in a car for 25 to 60 minutes; she can walk or stand for 15 minutes; sitting hurts due to arthritis and hip replacements; she can lift five to ten pounds; she has constant arthritis in her fingers, and she has difficulty breathing and being tired.  (AR at 54-72.) Plaintiff submitted a Medical Source Statement completed on April 30,

1 2012, which reflected that her impairment related to "hip pain/arthritic hips" had lasted or was
2 expected to last at least 12 months and that due to having good days and bad days, Plaintiff
3 would likely be absent from work about four days a month or more than four days. (AR at 701-
4 704.)  Both the hearing testimony and the Medical Source Statement reflected the Plaintiff
5 needed a cane.  (AR at 70; AR at 703.)

6 The ALJ rejected Plaintiff's assertions of functional limitations as follows: 1) breast
7 cancer: there was no objective medical record of ongoing breast pain reported to her medical
8 providers; 2) hysterectomy and hernia repair were successfully performed with no objective
9 medical evidence of ongoing complaints to her medical provider; 3) cardiac evaluation for
10 shortness of breath indicated dyspnea[2] was possibly related to obesity, but claimant chose not
11 to pursue any medical course to loose weight; 4) hip pain resolved by surgeries and no evidence
12 of a cane being medically required by any physician; 5) no objective medical evidence of
13 constant arthritic pain and limited daily activities; 6) shortness of breath and level of effort was
14 questionable for physical therapist's evaluation; 7) the Plaintiff had asserted she could work
15 when filing for unemployment benefits from 2008 through October 2010; 8) the weight given
16 to the Medical Source Statement by Plaintiff's doctor was reduced because it was not made by
17 her regular doctor and was qualified as being based on patient's self-reporting; 9) substantial
18 weight was given to State-agency medical consultant's opinion.

19 Based on the State-agency medical consultant's opinion issued September 15, 2011, the
20 ALJ found the Plaintiff was not credible in regard to her functional capacity, and he assessed
21 her RFC for an 8-hour work day to be: sit 6 hours; stand 2 hours; walk 2 hours; occasionally lift
22 and carry 10 pounds; frequently lift and carry less than 10 pounds; occasionally climb stairs;
23 never climb ladders; occasionally balance; frequently stoop; occasionally kneel and crouch;
24 never crawl; she should avoid moderate exposure to heights and moving machinery; avoid
25 concentrated exposer to dust, fumes and smoke and temperature extremes. (AR at 97-98.) And,
26 there was no medical need for a cane.  The ALJ's RFC resulted in a finding that the Plaintiff

---

27 [2]Shortness of breadth: also referred to in medical notes as SOB and dyspnea, which is the
28 feeling associated with shortness of breadth.

- 6 -

could perform a wide array of sedentary jobs, which included the type of job she had previously performed when she was a dispatcher for a limousine company from 1997 to1998.

1.  The ALJ failed to offer specific, clear and convincing reasons for rejecting claimant's testimony about the severity of her symptoms.

"While questions of credibility are functions solely for the ALJ, this Court 'cannot affirm such a determination unless it is supported by specific findings and reasoning.'" (R&R (Doc. 19) at 16) (quoting *Robbins v. Comm'r Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "'To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.'" *Id.* (quoting *Ligenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Ligenfelter*, 504 F. 3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F. 2d 341, 344 (9th Cir. 1991)). She is not required to show her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that the impairment could reasonably have caused some degree of symptom. *Smolen*, 80 F.3d at 1282. "'Second, if the claimant meets this first test and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of the symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282 (9th Cir. 1996)). "The clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

Here, the ALJ determined the Plaintiff's objective medical record satisfied the first step in assessing credibility. Only the second step is at issue: whether there is clear and convincing evidence that she overstated the severity of her symptoms and their functional effect. An ALJ may not disregard Plaintiff's asserted severity of symptoms <u>solely</u> because it is not substantiated affirmatively by objective medical evidence. (R&R (Doc. 19) at 16-17) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Robbins*, 466 F.3d at 887 (citing SSR 96-7p,

1996 WL 374186 at *1; *Light v. Soc. Sec. Admin.*, 119 F.3d 789m 792 (9th Cir. 1997)) (emphasis added).

At step two, the ALJ may consider the objective medical evidence, the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, precipitating and aggravating factors, medication taken, and treatments for relief of pain or other symptoms. See 20 C.F.R. § 404.1529(c); SSR 96–7p at 3; *Bunnell*, 947 F.2d at 346. Other "'[f]actors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.'" (R&R (Doc. 19) at 17) (quoting *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007).

So, rejecting a claimant's testimony because it was "not consistent with or supported by the overall medical evidence of record" is the type of justification the Ninth Circuit has recognized as prohibited by the social security regulations, *Robbins*, 466 F.3d at 884 (citing SSR 96–7p); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997), but "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony," *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir.2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995) (ALJ must adequately discuss the medical record and identify contradictions between claimant's testimony and medical evidence). In short, it is not enough for the ALJ to provide a lengthy summary of the medical evidence; the ALJ must identify any contradictions between Plaintiff's testimony and this medical evidence. The ALJ needs to state what symptom or limitation testimony he finds not credible and what facts in the record lead to that conclusion. *Smolen*, 80 F.3d at 1284. To be clear and convincing, there must be something more or in addition to a lack of objective medical evidence.

The Plaintiff does not object to the ALJ's conclusion that by the end of 2009, Plaintiff had been successfully treated and recovered from breast cancer that required a mastectomy and radiation; menorrhagia that required an hysterectomy, and a urological problem that required

the removal of one kidney.  Plaintiff had no residual effects from these conditions, with the exception of her chronic stage III renal condition.  Plaintiff alleged an onset date of December 4, 2008, the date of her last employment.  The first surgery, the mastectomy, occurred February 2009 and the last surgery, the nephrectomy, was September 2009, with Plaintiff being fully recovered from the surgery by January 20, 2010.  (AR at 310.)  It is undisputed that subsequent to the removal of her one kidney, the Plaintiff suffers from chronic Stage III kidney disease.

The ALJ found the Plaintiff was not credible because she asserted she was disabled during this time period when she was collecting unemployment from December 2008 through October 2010.  Plaintiff's application for disability was filed **October 15, 2010**, at which time she asserted she was disabled due to "cancer, kidney, and hysterotomy."  By December, 2010, she reported: she did not do much of anything, get dressed, wash, husband cooks, walks dog short distance two times a day, sometimes visits friends, watches T.V.  She reported whenever she walked for more than a few feet she has shortness of breath, pain in both legs most of the time; she could walk 50 yards in 4 minutes; lift and carry 5 lbs, 5 to 6 times a day; she does not clean the house, cook, or do laundry, yard work, or other household chores.  She reported using a cane for all walking for one-year.   (AR at 186-188.)

Receiving unemployment benefits after the alleged onset date of disability can be considered by an ALJ to cast doubt on Plaintiff's credibility because it shows she has held herself out as capable of working.  *Carmickle v. Commissioner, Soc. Security*, 533 F.3d 1155, 1661-62 (9th Cir. 2008); *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir.1988). But, the two are not necessarily inconsistent.  *Cf. Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999) (finding social security disability benefits often consistent with claim for relief under the ADA even though there must be an ability to work to obtain relief under the ADA).  "It is the underlying circumstances that will be of greater relevance than the mere application for and receipt of the benefits."  (Reply (Doc. 17), Ex. A: August 9, 2010 Soc. Sec. Memo to ALJs.) The ALJ did not consider the Plaintiff's circumstances which involved one severe impairment followed unexpectedly on the heels of the other.  Upon termination of her employment, December 4, 2008, Plaintiff could not have known what lay ahead in terms of her medical

- 9 -

conditions: first breast cancer and chemotherapy to be followed by a full hysterectomy, and then the need to remove one kidney. Plaintiff's hindsight claim, made October 15, 2010, for a disability period beginning December 4, 2008, must be evaluated in light of the medical record reflecting one severe impairment after another.

Plaintiff received her primary care at the Freedom Park Health Center from Dr. Laurie Miller and Vickie Clous, Family Nurse Practitioner (FNP). She was also seen by a cardiologist, Dr. Marshall, a urologist, Dr. Jan, a pulmonologist, Dr. Engelsberg, an orthopedist, Dr. Robertson, and a surgeon, who performed a hernia operation.

July 12, 2010, Plaintiff saw the cardiologist related to shortness of breath while walking the dog. He found no obstructive coronary artery disease or structural heart disease. According to the ALJ, "cardiac evaluation in June 2010 for shortness of breath indicated that dyspnea was possibly related to obesity. However, the claimant chose not to pursue any medical course to lose weight." (AR at 28.) The Court has reviewed FNP Clous' record from June 14, 2010 and the cardiologist records for June 7 and July 12 and cannot find the reference relied on by the ALJ. Even if such a reference existed, in the case of obesity, it is not legitimate to find a lack of credibility based on a failure to follow even a prescribed treatment for obesity. *Orn*, 495 F.3d at 637. Even when the medical record suggests a patient was advised to lose weight or even prescribed weight loss treatment, a finding of "failure to follow prescribed treatment" would be inappropriate unless the record also suggests that there was any chance of such a prescription succeeding in eliminating or ameliorating Plaintiff's obesity, let alone "clear evidence" that the treatment would be successful. *Id.* The ALJ did not consider whether the "medical recommendation" to lose weight stood any chance of succeeding in treating Plaintiff's obesity or any other condition, including any cardiological problem or shortness of breath with exertion.

One year after her appointment with the cardiologist for shortness of breath, on June 15, 2011, Plaintiff was referred to a pulmonary specialist. She described her exertional dyspnea as getting worse over the approximate past year. She was at a point where she could not walk one block or do housework without getting short of breath. The doctor's impression was: possible

asthma. Approximately a month later, the doctor, David A. Engelsberg, M.D., Pulmonary Consultant, described her as breathing well and using Symbicort, asthma stable.

June 16, 2011, Plaintiff saw Dr. Robertson at Tucson Orthopaedic for a consult for pain in both hips, with significant problem rolling over in bed and walking for any length of time. She reported she had had significant hip and groin pain for approximately 4 to 6 months: January or March 2011. Radiography revealed "advanced osteoarthritis of both hips." Upon examination, wherein she had no difficulty getting up on the examining table, the doctor found definite pain on log rolling of the Right hip and some pain on log rolling of the Left hip. Flexion and rotation was particularly painful on the Right hip. The doctor's assessment was <u>severe</u> osteoarthritis of both hips. He advised total hip arthroplasty of both hips, which would follow a prescheduled hernia surgery.

In August 2011, Plaintiff had hernia surgery, and subsequently was hospitalized on August 9, 2011, through August 14, 2011 for acute renal failure. By September 8, 2011, she appears to have recovered from the episode of renal failure and would fully recover from the hernia surgery so she could undergo Right hip surgery December, 2011, and Left hip surgery in January or February, 2012.

Simply looking at the chronology of surgeries in 2011, Plaintiff was either undergoing surgery or recovering from a surgical procedure from August 2011 until January or February of 2012. The June 16, 2011, medical record from Dr. Robertson at Tucson Orthopaedic notes that Plaintiff reported to him that she had had significant hip and groin pain for approximately 4 to 6 months, which might place the onset for what Dr Robertson described as "<u>advanced</u> osteoarthritis of both hips" to be January 2011. If so, impairment due to Plaintiff's osteoarthritic hips, in combination with her 2011 hernia surgery, renal failure, and end-of-the year hip surgeries, might have resulted in an inability to work for a period of at least 12 months. But, the ALJ failed to determine an onset date for the osteoarthritis of her hips because he found it resolved by surgery. It appears the ALJ relied on this same conclusion made by the State-

- 11 -

agency physician,[3] who's opinion was issued September 15, 2011, prior to Plaintiff undergoing either of the hip replacement surgeries.

The ALJ found: "Bilateral hip pain has been addressed with surgery. Medical record of these surgeries was not provided at the hearing level. Although the claimant uses a single point cane, there is no evidence that this is medically required or was prescribed by a physician." (AR at 29.) There is no requirement that a cane be prescribed by a doctor to be considered a necessary assistive device, and an ALJ does not need to make an express finding of medical necessity in all cases in which a claimant uses a cane. Plaintiff's use of a cane, without a medical prescription or directive, does not make Plaintiff's credibility suspect. *See Cf. Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (finding it absurd the ALJ thought claimant's use of a cane without prescription was suspicious when prescription was not required to use a cane). So for purposes of assessing credibility in respect to her using a cane, the ALJ should have considered that Plaintiff suffered from Meniere's disease, which can result in vertigo and for which she was treated with meclizine for balance; she was obese, and had undergone hip surgery.

However, if the Plaintiff wants the ALJ to reach the conclusion that her cane is "medically required" to show she is an individual capable of less than a full range of sedentary work, SSR 96–9P, requires: "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." At best, Plaintiff presents medical evidence that the orthopedist and physical therapist noted, without comment, her use of a cane. *Morgan v. Commissioner Soc. Security*, 2014 WL 1764922 * 1-2 (Md. April 30, 2014) (explaining even medical evidence of prescription for cane may be insufficient; plaintiff must show medical documentation for how the cane was actually needed).

The ALJ relied on a functional capacity evaluation performed on April 26, 2012, by a physical therapist which, the ALJ concluded, reflected shortness of breath as well as her level

---

[3]The ALJ failed to specify that this conclusion was based on the State-agency physician's opinion, but there exists no other foundation for it.

- 12 -

of effort were questionable and invalidity of some of the results was noted. (AR at 29.) The physical therapist's report reflects normal but "questionable" effort given for trunk flexion, trunk extension, trunk side bends, reaching overhead, reaching for 2 minutes, knuckle kyphosis, knuckle to shoulder and carrying 16 pounds. (AR at 709); (AR at 715). The Waddell test for symptom magnification was negative. (AR at 716.) The test results and examiner, however, concluded: submaximal and inconsistent effort. (AR at 717, 718). Efforts to impede accurate testing as to a claimant's limitations can support a finding of lack of credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). According to the functional capacity evaluation, Plaintiff's effort was curtailed by her claimed shortness of breath. (AR at 718 (patient consistently limited by reported shortness of breadth). The test questioned the grip and pinch test results and noted Plaintiff's purse weighed 4 pounds. *Id.* The test noted severe restriction in regard to hip flexibility, without question. *Id.* at 711. The ALJ's credibility determination based on this functional capacity evaluation is limited to Plaintiff's claims regarding shortness of breadth and dyspnea and arthritis pain in her hands.

The ALJ found: "very limited objective evidence to support the claimant's allegations of . . . limited daily activities." (AR at 29.) The Defendant argues that read in context, the ALJ meant that in light of objective medical evidence of successful surgeries and treatment and minimal complaints about debilitating pain by Plaintiff to her doctors, the ALJ found her claimed limitations regarding daily activities not credible. (Response (Doc. 16) at 12.) The Defendant suggests the ALJ relied on the medical records from Plaintiff's FNP, Vickie Claus, from Plaintiff's routine visits, which reflect no complaints for shortness of breath, arthritis, and osteoarthritis in her hips.[4] The Court is not free to rely on a record not relied on by the ALJ, and

---

[4] *See eg*:
Beck was seen by nurse practitioner Vickie Clous on June 14, August 13, and November 16, 2010 regarding constipation, hyperlipidemia (high cholesterol) and hypertension. At each of these appointments, Beck reported no new problems or concerns, and denied chest pain at rest, chest pain with exertion, shortness of breath, shortness of breath with exertion, dizziness, nausea, or fatigue. (AR 473, 476, 481, 492, 494). Beck also denied exercise intolerance and dyspnea (shortness of breath), and denied joint and muscle pain. (AR 473, 481, 492). At

- 13 -

if this were the record relied on by the ALJ, the Court notes that the medical record does contain evidence of these complaints. Plaintiff complained of shortness of breath to two specialists, both a pulmonologist and cardiologist. She saw an orthopedist and was diagnosed and treated for severe osteoarthritis in both hips. Post-hearing, the Plaintiff continues to complain of shortness of breath with exertion. (AR at 719-753: Univ. of Ariz. Medical Cntr. records of pulmonary testing due to shortness of breath after exertion, finding no respiratory problems and normal oxygenation). These specialists' opinion are owed greater weight as a matter of regulation. *Garrison*, 2014 WL 3397218 *14 (citing 20 C.F.R. § 404.1517(c)(5)). There is objective medical evidence in the record to support both Plaintiff's complaints of shortness of breath with exertion and osteoarthritis.

"ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain and other symptoms because impairments that would unquestionably preclude work will often be consistent with doing more than merely resting in bed all day. *See, e.g., Smolen*, 80 F.3d at 1287 n. 7." *Id.* at *17. "'Many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.'" *Id.* (quoting Fair *v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). "Recognizing that 'disability claimants should not be penalized for attempting to lead normal lives in the face of

---

each appointment, Clous noted her exam showed "no stigmata of inflammatory or degenerative arthritis" and that Beck's gait was normal. (AR 477, 484, 495). Clous advised Beck to limit fat and sodium intake, lose weight, follow a low-fat and low-cholesterol diet, and exercise 30 minutes four days per week. (AR 479, 486, 497). (R&R (Doc. 19) at 5.)

Beck was seen by nurse practitioner Vickie Clous on February 16, May 13 and November 18, 2011 for hyperlipidemia and hypertension. On February 16 and November 18, Beck denied chest pain at rest, chest pain with exertion, shortness of breath, shortness of breath with exertion, dizziness, nausea, or fatigue. (AR 640, 657). Beck also denied exercise intolerance and dyspnea. (AR 640). On May 13, Beck complained of shortness of breath with exertion and dyspnea, but denied chest pain at rest, chest pain with exertion, shortness of breath, dizziness, nausea, or fatigue. (AR 674). At each appointment, Clous noted her exam showed "no stigmata of inflammatory or degenerative arthritis." (AR 643, 661, 678). *Id.* at 6.

their limitations,' we have held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d at 722 (further citations omitted)). "'The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ..., and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.'" *Id.* (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir.2012)).

In conclusion, the ALJ erred in finding the Plaintiff not credible based solely on a lack of objective medical evidence to support her testimony about osteoarthritic hip pain and shortness of breadth. The ALJ erred in finding the Plaintiff not credible because her shortness of breadth was caused by obesity and she failed to loose weight; because she filed for unemployment benefits during part of the time she claims to be disabled, and that her use of a cane was suspicious. The ALJ erred in finding the Plaintiff not credible in all her testimony based on the functional capacity evaluation by the physical therapist which reflected a lack of effort due to shortness of breadth and in relation to the pinch test.

2.   <u>The ALJ discounted Plaintiff's Medical Source Statement and gave substantial weight to the State-agency's physician's opinion.</u>

It was error for the ALJ to rely on a non-examining State-agency physician's opinion issued prior to surgery that Plaintiff's osteoarthritis in her hips would be fully resolved with surgery and/or to construe this as evidence that Plaintiff was not credible post-surgery regarding her assertions of severe hip pain affecting her ability to sit for 30 to 45 minutes at one time, (AR at 702: Medical Source Statement 4/30/2012), and that her hips were not fully healed (AR at 66: 5/31/2012 hearing testimony).

It was especially error to weigh the non-examining, State-agency consulting physician's outdated opinion as substantial over that of Plaintiff's Medical Source Statement. The ALJ found "reduced weight" in the Medical Source Statement because the doctor's "functional

limitations were qualified throughout the form statement with 'per patient response, '" (AR at 29), and the doctor's signature was unreadable. The Plaintiff admitted the statement was not completed by her treating physician Dr. Miller or the FNP Vickie Clous, but was completed by another doctor, who sometimes covered for Dr. Miller. As noted by the ALJ, Plaintiff had been treated at Freedom Park Health Center since 2010 and seen every three months. (AR at 27.) As noted by the ALJ the doctor completing the statement very carefully identified which portions of the statement were based on "patient's response." The statement did not, however, include this qualifier throughout. In part, the doctor did not qualify the statements as follows: Diagnosis: hip pain, arthritic hips; Prognosis: fair; Symptoms: pain, stiffness; the nature, frequency, precipitation facts and severity of pain was described as: bilateral hips, daily, worse with walking, climbing, cold weather, unable to squat; clinical and objective signs were described as decreased ACM, X-rays, and hip replacements. (AR at 701.) Without any qualifier, the doctor noted patient is not a malingerer, and Patient's impairments lasted or can be expected to last at least twelve months. (AR at 701.) The doctor estimated "the patient is likely to be absent from work as a result of the impairments or treatment" for "about four days per month" and "more than four days per month. (AR at 704.) The vocational expert testified that if an employee is likely to be absent from work for three or more days per month, she would lose her job. (AR at 77-78.)

3.      Remand

"There is no bright line test for determining when the [Commissioner] has failed to develop the record. The determination in each case must be made on a case by case basis." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir.1994). "An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.1995). To warrant reversal, the Plaintiff must demonstrate prejudice or unfairness in the proceedings from the ALJ's failure to develop the record. *Cruz v. Schweiker*, 645 F.2d 812, 814 (9th Cir. 1981). The ALJ's "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel.'"

- 16 -

*Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983).

First and foremost, the claimant has the burden to raise the issue, i.e., there must be sufficient objective evidence in the record to suggest the "existence of a condition which could have a material impact on the disability decision." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997.) The ALJ's duty to further develop the record is triggered "only when there is ambiguous evidence or when the record is inadequate for proper evaluation of evidence." *Mayes v. Massanari*, 276 F.3d 453, 4509–60 (9th Cir.2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001)). To further develop the record, the Commissioner may order consultative examinations, subpoena evidence and opinions from treating physicians, and seek advice from vocational experts.

Here, the ALJ's duty to develop the record further was triggered in respect to Plaintiff's hip pain when she testified in May 2012 that she had the last, left, hip replacement surgery in January or February of 2012, and her hips were not yet fully healed. The ALJ noted, "medical record of these surgeries was not provided at the hearing level." (AR at 29.) There were no medical records for Plaintiff's post-surgical treatment and recovery from these surgeries. The fact of the surgeries was not at issue, therefore, there was insufficient evidence for the ALJ to assess Plaintiff's disability post-surgery. The State-agency's non-examining opinion, issued pre-surgery, was not substantial evidence to support a functional capacity assessment post-surgery.

Because the ALJ discounted Plaintiff's credibility related to her assertion of debilitating hip pain based on the State-agency physician's opinion that hip pain was resolved by surgery, the ALJ did not determine an onset date or consider how long debilitating pain persisted post-surgery. *See Regennitter v. Comm'r of Soc. SEC. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999) (finding, even when claimant's testimony and doctor's opinion are credited, unresolved issue of claimant's disability onset date prevented remand for award of benefits). As noted above, there was no basis for the ALJ to discount Plaintiff's credibility regarding her assertion that she was precluded from sitting uninterrupted for 6 hours in an 8 hour work day. *See* (AR at 27 (ALJ

noting that based on Plaintiff's self-reporting, the Medical Source Statement reflected she was incapable of even sedentary work).

Finally, remand in this case is necessary in fairness to the Commissioner. In respect to Plaintiff's other impairments, the case cannot be resolved under the credit-as-true rule. Plaintiff carries the burden to establish disability, but the record when reviewed as a whole is missing any functional assessment from even one of her many treating physicians, who personally treated her over the five-year span she claims to be the relevant period of disability. *See Garrison,* 2014 WL 3397218 *20-23 (even when all conditions are met for an award of benefits based on the credit-as-true rule, remand for further proceedings is appropriate where there is serious doubt on the record as a whole that claimant is, in fact, disabled).

There are ample sources for both the ALJ and Plaintiff to compile a more accurate picture of the severity and duration of Plaintiff's impairments.

**Accordingly**

**IT IS ORDERED** that the R&R (Doc. 19) is not adopted by the Court.

**IT IS FURTHER ORDERED** that the Decision of the Commissioner is REVERSED and this action is REMANDED to the ALJ to further develop and consider the record as explained herein.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment accordingly.

DATED this 29th day of September, 2014.

David C. Bury
United States District Judge